UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
TRAFFIC SPORTS USA, INC.,

                Plaintiff,

- against -

LUIS SEGURA, *individually and
as an officer, director, shareholder and/or
principal of Sophi's Place Bar Restaurant, Inc.*,
SOPHI'S PLACE BAR RESTAURANT, INC.,
*d/b/a Kaprichos Bar, and* KAPRICHOS
BAR, INC., *d/b/a Kaprichos Bar*,

                Defendants.
------------------------------------------------------X

**REPORT AND RECOMMENDATION**

06 CV 3360 (RJD)

On July 11, 2006, plaintiff Traffic Sports USA, Inc. ("Traffic Sports") filed this action against defendants Sophi's Place Bar Restaurant, Inc., d/b/a Kaprichos Bar ("Sophi's Place"), Kaprichos Bar, Inc., d/b/a Kaprichos Bar ("Kaprichos Bar"), and Luis Segura ("Segura"), individually and as an officer, director, shareholder, and/or principal of Sophi's Place Bar Restaurant, Inc. (collectively "defendants" or "Kaprichos Bar"), alleging violations of 47 U.S.C. §§ 553 and 605. Plaintiff claims that on June 8, 2005, defendants illegally intercepted a closed-circuit satellite television broadcast of a soccer match between Argentina and Brazil.

Upon the failure of defendants to answer or otherwise respond to the Complaint, plaintiff moved for default judgment on December 7, 2006. The Clerk of the Court entered default against defendants on December 13, 2006, and the action was subsequently referred to the undersigned to conduct an inquest and prepare a Report and Recommendation on the amount of damages to be awarded.

For the foregoing reasons, the Court respectfully recommends that, pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II), 605(e)(3)(C)(ii), and 605(e)(3)(B)(iii), plaintiff be awarded $13,750.00 in statutory damages and $550.00 in attorney's fees.

## FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to a closed-circuit television licensing agreement, plaintiff was given the proprietary rights to commercially distribute the June 8, 2005 broadcast of a soccer match between Argentina and Brazil (the "Event"). (Corwin Aff.[1] ¶¶ 3-4). By paying a sub-licensing fee to plaintiff, certain commercial establishments, including theaters, arenas, clubs, lounges, and restaurants, could obtain access to the broadcast. (Id. ¶¶ 5-7; Compl.[2] ¶¶ 8-11). Upon entering into this sub-licensing contract, participating establishments would receive electronic decoding capability and/or the satellite coordinates necessary to receive the signal. (Corwin Aff. ¶ 6). The broadcast of the Event was solely intended for those establishments that had paid plaintiff the appropriate sub-licensing fee; the Event was neither available nor intended to be viewed by the general public. (Id.)

In the Complaint, plaintiff asserts that Kaprichos Bar is a commercial establishment located at 91-13 31st Avenue, East Elmhurst, New York 11369. (Compl. ¶¶ 5, 7; Browand Aff.[3]

---

[1] Citations to "Corwin Aff." refer to the Affidavit of Marcus W. Corwin, annexed as Exhibit C to plaintiff's Affidavit for Judgment by Default, filed December 7, 2006.

[2] Citations to "Compl." refer to plaintiff's Amended Complaint, filed September 20, 2006. Accordingly, references to "the Complaint" refer to plaintiff's Amended Complaint.

[3] Citations to "Browand Aff." refer to the Affidavit of Stephen J. Browand, annexed as Exhibit D to plaintiff's Affidavit for Judgment by Default, filed December 7, 2006.

¶ 3). Plaintiff also claims that Luis Segura is an officer, director, and/or shareholder of defendant Sophi's Place Bar Restaurant, Inc., d/b/a Kaprichos Bar. (Compl. ¶¶ 5, 6).

On June 8, 2005, at approximately 9:15 p.m., Stephen Browand, an auditor for plaintiff, entered Kaprichos Bar, where he observed that the establishment was displaying the soccer match between Argentina and Brazil. (Browand Aff. ¶ 3). Browand noted approximately 75 patrons inside Kaprichos Bar, and he also observed that there were five (5) television monitors available for viewing by patrons. (Id.) Additionally, Browand was able to describe the uniform colors of the teams playing in the match – yellow tops and blue shorts for Brazil, light blue and white tops and black shorts for Argentina – as well as the score of the match and a "BUD" logo on the screen. (Id. ¶ 4).

Plaintiff claims that Kaprichos Bar was not authorized to receive the satellite telecast of the soccer match between Argentina and Brazil on June 8, 2005, and that defendant indirectly profited from illegally showing the Event by selling food and drink to patrons interested in seeing the game. (Corwin Aff. ¶ 8; Pl.'s Mem.[4] at 10). Plaintiff further claims that defendants "could not have obtained the transmission of the Event had they not undertaken specific wrongful actions to intercept, receive, and/or exhibit the Telecast." (Corwin Aff. ¶ 9; Pl.'s Mem. at 5). In his affidavit, Mr. Corwin has proposed various ways in which Kaprichos Bar might have been able to illegally intercept and decode the encrypted satellite broadcast. (Corwin Aff. ¶ 9).

On July 11, 2006, plaintiff filed this action seeking damages pursuant to 47 U.S.C. §§ 553 and 605. Plaintiff served copies of the Summons and Complaint upon defendants pursuant to

---

[4]Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in support of Plaintiff's Motion for Default Judgment, filed December 7, 2006.

Rule 4 of the Federal Rules of Civil Procedure. A copy of the Summons and Complaint was served upon Sophi's Place on August 8, 2006 and upon Segura on August 22, 2006. Before defendants Sophi's Place or Segura had filed a responsive pleading, plaintiff filed an Amended Complaint on September 20, 2006, adding Kaprichos Bar, Inc. as a defendant in the action. (Compl. ¶ 7). Defendants Sophi's Place and Segura were then served with copies of the amended pleadings on September 25, 2006, and Kaprichos Bar, Inc. was served with a copy of the Summons and Amended Complaint on October 3, 2006.

When defendants failed to answer or otherwise respond to the Amended Complaint, plaintiff moved for entry of default, which was then entered by the Clerk of the Court on December 13, 2006. By Order dated August 17, 2007, the Honorable Raymond J. Dearie referred the matter to this Court to conduct an inquest and issue a Report and Recommendation on the amount of damages to be awarded. The parties were directed to submit papers in support of damage calculations by Order dated August 27, 2007. Defendants failed to respond to the Court's Order.

Plaintiff has requested $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); $100,000 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii) for defendants' willful violation of Section 605; $10,000 in statutory damages pursuant to 47 U.S.C. § 553(c)(3)(A)(ii); $50,000 in enhanced statutory damages pursuant to 47 U.S.C. § 553(c)(3)(B) for willful violation of Section 553; and $1,050 for attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Compl. at 7-8; Klass Aff.[5] ¶ 9).

---

[5]Citations to "Klass Aff." refer to the Affidavit of Richard A. Klass, Esq. for Attorney's Fees, annexed as Exhibit E to plaintiff's Affidavit for Judgment by Default, filed December 7, 2006.

## DISCUSSION

A. Default Judgment

Plaintiff moves for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. Prior to plaintiff's motion for default judgment, the Clerk of the Court entered default because defendants "failed to plead or otherwise defend [against the instant Complaint]." Fed. R. Civ. P. 55(a). A clerk's entry of default is not the same as a default judgment granted by the district court. Rather, Rule 55 sets forth a two-step process in which first a default, and then a default judgment, is entered. See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). After a default has been entered against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), a default judgment may be entered. See Fed. R. Civ. P. 55(b).

In this case, the Clerk of the Court entered default against defendants on December 13, 2006. Judge Dearie granted the motion for default judgment on August 17, 2007; defendants have not made any motions in the interim.

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law. See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). When evaluating whether to grant a default judgment, the Court must weigh the costs of prolonged litigation against offering "litigants a reasonable chance to be heard." Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; see also Meehan v. Snow, 652 F.2d at 277. It is well-settled that defaults are "generally disfavored" and "doubts should be resolved in favor of the defaulting party." Enron

Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Accordingly, just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right. See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice"). Courts should take great care in entering default judgment, ensuring if at all possible that both parties have their cases judged on the merits. See Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.

A court possesses significant discretion and may consider a number of factors in deciding whether or not to grant a default judgment, including "whether the grounds for default are clearly established" and "the amount of money potentially involved" -- the more money involved, the less justification for entering the default judgment. See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992) (citations omitted). Additionally, a court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant. See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, §§ 2685, 2688 (3d ed. 1998).

Plaintiff alleges that defendants violated 47 U.S.C. §§ 553(a)(1)[6] and 605(a)[7] through the

---

[6]Section 553(a)(1) provides, in pertinent part, "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1).

[7]Section 605(a) provides, inter alia, that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a).

6

unauthorized interception of plaintiff's satellite transmission. However, a court is not permitted to grant damages under both statutes for a single illegal transmission. See International Cablevision, Inc. v. Sykes, 997 F.2d 998, 1009 (2d Cir. 1993). Rather, the Second Circuit has stated that where a defendant is found to have violated both statutes, the court should award damages pursuant to Section 605. Id.; see also Garden City Boxing Club, Inc. v. Polanco, No. 05 CV 3411, 2006 WL 305458, at *5 (S.D.N.Y. Feb. 7, 2006), aff'd, 228 Fed. Appx. 29, 30 (2d Cir. 2007). Accordingly, the Court evaluates plaintiff's request for damages under Section 605 alone.

In this case, it is clear that the allegations in the Complaint establish the elements of liability necessary to state a claim under Section 605. Section 605(a) has been held to apply to the interception of cable communications originating as a satellite or radio transmission. See International Cablevision, Inc. v. Sykes, 75 F.3d 123, 131-32 (2d Cir. 1996), cert. denied, 519 U.S. 929 (1996); see also Garden City Boxing Club, Inc. v. Polanco, 2006 WL 305458, at *5; Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., No. 01 CV 3945, 2002 WL 2022522, at *2 (E.D.N.Y. May 21, 2002); Time Warner Cable of New York City v. Taco Rapido Rest., 998 F. Supp. 107, 109 (E.D.N.Y. 1997). Here, defendants' alleged conduct -- the unauthorized interception, receipt, and broadcast of the Event derived from satellite communications -- violates this statute.

Having established that plaintiff's Complaint does state a claim under Section 605, it is beyond dispute that defendants are in default. Neither of the corporate defendants, Sophi's Place Bar Restaurant, Inc. or Kaprichos Bar, Inc., nor the individual defendant, Luis Segura, has responded to the Complaint. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear -- it does not even oppose this motion").

Moreover, both corporate defendants have failed to obtain counsel. Such a failure to obtain counsel constitutes a failure to defend because corporations cannot proceed in federal court without counsel. See Shapiro, Bernstein & Co. v. Cont'l Record Co., 386 F.2d 426, 427 (2d Cir. 1967) (per curiam) (noting the well-settled law that a corporation cannot appear without an attorney); see also Jones v. Niagara Frontier Transp. Auth., 722 F.2d 20, 22 (2d Cir. 1983) (discussing the rationale for requiring corporations, as "artificial" entities, to appear through counsel only). Further, the amount of money involved in this case is not great, unlike a case in which there are potentially millions of dollars involved. See Hirsch v. Innovation Int'l Inc., 1992 WL 316143, at *2 (deciding that default judgment would not enter because plaintiff's damages request ran well into the millions of dollars, and giving defendant an opportunity to contest the default judgment).

Here, defendants have not only failed to file an answer or otherwise move with respect to the Complaint, but they have also failed to respond either to plaintiff's motion for entry of default judgment or to the Order from this Court regarding the calculation of damages. Thus, plaintiff's evidence on damages is unrefuted. Given the numerous opportunities afforded defendants and their apparent lack of interest in participating in these proceedings, there is no compelling reason for further delay.

Accordingly, it is respectfully recommended that plaintiff's motion for default judgment be granted.

B. <u>Damages</u>

When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1080 (1993); <u>see also</u> <u>Montcalm Publ'g Corp. v. Ryan</u>, 807 F. Supp. 975, 977 (S.D.N.Y. 1992). However, unlike allegations pertaining to liability, allegations in connection with damages are not deemed admitted in the context of a default judgment. See <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d at 158. The plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest the claimed damages. <u>Id.</u> Indeed, "'while a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.'" <u>Levesque v. Kelly Commc'ns, Inc.</u>, No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting <u>Flaks v. Koegel</u>, 504 F.2d 702, 707 (2d. Cir 1974)).

While the "court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." <u>Fustok v. ContiCommodity Servs., Inc.</u>, 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (citing <u>Transportes Aereos de Angola v. Jet Traders Inv. Corp.</u>, 624 F. Supp. 264, 266 (D. Del. 1985)), <u>aff'd</u>, 873 F.2d 38 (2d Cir. 1989). Here, where plaintiff has filed reasonably detailed affidavits and a memorandum of law pertaining to the damages requested, and where the defendant has failed to make an appearance in the case, the Court can make an informed recommendation regarding damages without an evidentiary hearing.

1) <u>Statutory Damages</u>

Where, as here, a violation of Section 605 has occurred, plaintiff is entitled to elect statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(i). In this instance, plaintiff seeks statutory damages pursuant to 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii). (Compl. at 7-8; Pl.'s Mem. at 6, 13).

Section 605 provides for penalties "for <u>each</u> violation of subsection (a) of this section . . . in a sum of not less than $1,000 or more than $10,000, as the court considers just . . . ." 47 U.S.C. § 605(e)(3)(C)(i)(II) (emphasis added). In the absence of a clear statutory definition of "violation," the Court exercises its discretion in determining how many violations of Section 605 a defendant has committed. See <u>Garden City Boxing Club, Inc. v. Rodriguez</u>, No. 05 CV 3692, 2006 WL 1064189, at *3 (E.D.N.Y. Mar. 20, 2006); <u>Garden City Boxing Club, Inc. v. Rosado</u>, No. 05 CV 1037, 2005 WL 3018704, at *3 (E.D.N.Y. Oct. 6, 2005). The nature of the illegal conduct makes it difficult to ascertain the number of times that defendants violated Section 605. Due to this difficulty, most cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation. <u>See, e.g.</u>, <u>Time Warner Cable of New York City v. Taco Rapido Rest.</u>, 988 F. Supp. at 110-11. Accordingly, as plaintiff's evidence indicates that the Event was illegally broadcast at Kaprichos Bar only on June 8, 2005, the Court calculates damages based on one violation of Section 605.

In determining the amount of damages that can be imposed for each violation within the statutory range of $1,000 to $10,000, Section 605 leaves the decision within the discretion of the court. See 47 U.S.C. § 605(e)(3)(C)(i)(II); <u>see also</u> <u>Time Warner Cable of New York City v. Taco Rapido Rest.</u>, 988 F. Supp. at 111 (citing cases). The factors to be considered in

determining the appropriate amount of damages include the "'pecuniary loss sustained by the victim as a result of the offense, the financial resources of the defendant, . . . the financial needs and earning ability of the defendant, . . . as well as the burden that a damage award would impose on the defendant relative to the burden alternative relief would impose.'" Cablevision Sys. Corp. v. De Palma, No. 87 CV 3528, 1989 WL 8165, at *6 (E.D.N.Y. Jan. 17, 1989) (quoting Cablevision Sys. Dev. Co. v. Cohen, No. 84 CV 1155, slip. op. at *4-5 (E.D.N.Y. May 20, 1988) (interpreting 47 U.S.C. § 553)); see also Entertainment by J & J, Inc. v. Ramsarran, No. 01 CV 5223, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002).

In calculating damages, some courts have awarded a flat damage amount when considering the unauthorized receipt and broadcast of a cable program by a commercial establishment. See, e.g., Top Rank, Inc. v. Ortiz, No. 01 CV 8427, 2003 WL 1960211, at *3 (S.D.N.Y. Mar. 27, 2003); Kingvision Pay-Per-View, Ltd. v. Rodriguez, No. 02 CV 7972, 2003 WL 548891, at *2 (S.D.N.Y. Feb. 25, 2003); Cablevision Sys. Corp. v. Maxie's N. Shore Deli Corp., No. 88 CV 2834, 1991 WL 58350, at *2 (E.D.N.Y. Mar. 20, 1991) (awarding damages "based on the Court's view of the equities and not the estimate of the number of patrons"). Other courts have assessed damages based on the number of patrons in the commercial establishment during the broadcast. See, e.g., Garden City Boxing Club, Inc. v. Rosado, 2005 WL 3018704, at *4 (multiplying the number of patrons present at the unauthorized broadcast by the residential charge for the pay-per-view event being shown, $54.95); Top Rank, Inc. v. Tacos Mexicanos, No. 01 CV 5977, 2003 WL 21143072, at *4-5 (E.D.N.Y. Mar. 28, 2003) (awarding $50 per patron); Entertainment by J & J, Inc. v. Mama Zee Rest. & Catering Servs., Inc., 2002 WL 2022522, at *3 (same).

In this case, plaintiff petitions the Court for $10,000 in statutory damages, the maximum allowable under Section 605. (Pl.'s Mem. at 6). To support its request, plaintiff makes a variety of arguments, relating both to its actual losses from Kaprichos Bar and to the damage plaintiff's business suffers generally as a result of piracy. (Id. at 7-12). Plaintiff requests additional compensation because defendants' "patrons presumably purchased food and/or drinks while viewing the event." (Corwin Aff. ¶ 10). Given that defendants run a bar/restaurant, this assertion is reasonable. Furthermore, plaintiff claims that "the unauthorized interception, receipt, and broadcast of the Event and other closed-circuit programming threatens the viability of the closed-circuit industry" by driving customers to unauthorized viewing locations, which hinders the ability of authorized establishments to recoup the sub-licensing fee and plaintiff's ability to market its product. (Pl.'s Mem. at 10-11). The practice of illegally pirating broadcasts of the sort at issue in this case causes plaintiff to suffer "damage to its goodwill [sic] and reputation" and "possible loss of future business from legitimate commercial establishments which refuse to pay sub-license fees because they cannot compete with unauthorized . . . establishments which steal closed-circuit programming." (Id. at 12).

An obvious starting point for determining the damages owed to plaintiff is the licensing fee that defendants would have paid to show the Event legally; plaintiff estimates this to be $3,000. (Pl.'s Mem. at 8). If statutory damages were assessed at the rate of $50 per patron, as some courts have done (see discussion at page 11, supra), this would result in an award of $3,750 based on the estimated 75 patrons present at Kaprichos Bar during the illegal broadcast of the Event. (Browand Aff. ¶ 3). This amount would be greater than the statutory minimum of $1,000. See 47 U.S.C. § 605(e)(3)(C)(ii); Kingvision Pay-Per-View Ltd. v. Autar, 426 F. Supp.

2d 59, 63-64 (E.D.N.Y. 2006) (awarding $1,000 where multiplying the number of patrons by $50 would lead to a total less than the statutory minimum). An award of $3,750 would also be greater than the estimated fee Kaprichos Bar would have paid plaintiff to receive the authorized broadcast, and greater than the amount of damages often imposed against individuals who have received unauthorized programming in their own homes. See, e.g., Time Warner Cable v. Barnes, 13 F. Supp. 2d 543, 548 (S.D.N.Y. 1998) (awarding statutory damages of $1,000 against each of three defaulting residential defendants); Time Warner Cable v. Rivera, No. 94 CV 2339, 1995 WL 362429, at *4 (E.D.N.Y. Jun. 8, 1995) (awarding statutory damages of $1,000 against defaulting residential defendant who used converter for eight months). Accordingly, the Court respectfully recommends that plaintiff be awarded $3,750 in statutory damages.

2) Enhanced Damages

Plaintiff also seeks enhanced statutory damages pursuant to Section 605(e)(3)(C)(ii), which provides for additional awards of up to $100,000 for all Section 605 violations. (Pl.'s Mem. at 13). The statute permits the awarding of enhanced damages where the Section 605 violation was committed willfully and for purposes of private financial gain, see, e.g., J & J Sports Productions, Inc. v. Benson, No. 06 CV 1119, 2007 WL 951872, at *5 (E.D.N.Y. Mar. 27, 2007) (awarding statutory damages of $1,200 and enhanced damages of $3,600 where plaintiff did not advertise the event, charged no cover, and five patrons were present); Entertainment by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (awarding statutory damages of $5,000 and enhanced damages of $10,000 where defendant displayed a boxing match to eighteen patrons in his bar); Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12

13

(awarding statutory damages of $3,750 and enhanced damages of $5,000 where defendant displayed a boxing match to seventy-five people inside and twenty people outside his restaurant); Joe Hand Promotions v. Burg's Lounge, 955 F. Supp. 42, 44 (E.D. Pa. 1997) (awarding statutory damages of $1,000 and enhanced damages of $1,000 where defendants were found to have broadcast a boxing event in their respective taverns), and clearly applies to persons or entities that operate commercial establishments such as bars, taverns, and restaurants that exhibit unauthorized programming to patrons. See Time Warner Cable of New York City v. Taco Rapido Rest., 988 F. Supp. at 111-12.

It is clear to the Court that a statutory award of $3,750 alone would understate the seriousness of defendants' conduct, particularly since, as plaintiff contends, it has suffered intangible losses in the form of "damage to its goodwill [sic] and reputation" that might harm the "continued viability of Traffic Sports USA, Inc. as a business concern." (Pl.'s Mem. at 12). See American Television & Commc'ns Corp. v. Floken, Ltd., 629 F. Supp. 1462, 1466 (M.D. Fla. 1986). Specifically, plaintiff fears that legitimate commercial establishments will be unwilling and unable to compete financially with establishments such as Kaprichos Bar, which offer stolen programming to customers at no fee. (Pl.'s Mem. at 12). Defendants' acts have thus likely contributed to the erosion of plaintiff's sales and customer base. (Id.)

The evidence demonstrates that defendants acted willfully in illegally intercepting the Event under circumstances warranting imposition of enhanced damages pursuant to Section 605(e)(3)(C)(ii). Willful behavior under the statute has been interpreted to include "'disregard for the governing statute and an indifference for its requirements.'" ON/TV of Chicago v. Julien, 763 F.2d 839, 844 (7th Cir. 1985) (quoting TransWorld Airlines, Inc. v. Thurston, 469 U.S. 111,

127 (1985)). Here, it is clear that defendants intercepted and broadcast the Event without entering into a licensing agreement with plaintiff or paying fees to plaintiff. (Corwin Aff. ¶¶ 8-11). To accomplish this, defendants must have utilized an unauthorized decoder, illegally transferred an authorized decoder to their bar, or misrepresented their commercial establishment as a residential property to allow purchase of the Event at the residential price. (Pl.'s Mem. at 5). Defendants then broadcast the Event to approximately 75 patrons. (Browand Aff. ¶ 3). Thus, the evidence indicates that defendants acted willfully in illegally intercepting the Event.[8]

Given the willful nature of the violation, and mindful of the number of patrons in Kaprichos Bar at the time of the illegal broadcast, the Court concludes that an additional award of $10,000 is more than sufficient to deter future violations of Section 605. Plaintiff's demand for $100,000 in enhanced damages is excessive in light of the circumstances in this case, particularly because plaintiff has not presented any evidence demonstrating that defendants advertised the illegal broadcast of the Event or charged patrons a fee to enter the establishment.[9]

Accordingly, it is respectfully recommended that plaintiff be awarded statutory damages of $3,750 and $10,000 in enhanced damages, for a total of $13,750 in damages.

---

[8] One court in this district has noted that it is conceivable that a small business owner could accidentally sign up for residential cable service, or that an error on the part of a cable service provider could lead to the improper characterization of a business as a residence, thereby bringing into question whether or not a defendant willfully committed the Section 605 violation. See J & J Sports Productions, Inc. v. Louisias, No. 06 CV 339, 2006 WL 1662608, at *4 (E.D.N.Y. May 16, 2006). However, given that in this case defendants have defaulted, the Court declines to speculate as to potential excuses for what appears to be a willful violation.

[9] The Court notes that plaintiff is inconsistent with respect to enhanced damages. In the Complaint, plaintiff asks for enhanced damages of $100,000. (Compl. at 7-8). However, in its Memorandum of Law, plaintiff petitions the Court for $150,000 in enhanced damages (Pl.'s Mem. at 16), which is above the $100,000 statutory maximum. See 47 U.S.C. § 605(e)(3)(C)(ii).

C. Individual Defendant's Liability

Plaintiff's Complaint names both Sophi's Place Bar Restaurant, Inc., d/b/a Kaprichos Bar, and Luis Segura as an "officer, director, and/or shareholder" of Sophi's Place Bar Restaurant, Inc. (Compl. ¶ 6). To establish a contributory violation of 47 U.S.C. § 605(a), plaintiff is required to demonstrate that Segura authorized the violations set forth in the Complaint. Garden City Boxing Club, Inc. v. Morales, No. 05 CV 64, 2005 WL 2476264, at *10 (E.D.N.Y. Oct. 7, 2005) (citing cases); see also Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). "'To establish vicarious liability, . . . [plaintiff] must show that . . . [Segura] had a right and ability to supervise the infringing activities and had an obvious and direct financial interest in the exploitation of [the] copyrighted materials.'" Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10 (quoting Kingvision Pay-Per-View, Ltd. v. Olivares, No. 02 CV 6588, 2004 WL 744226, at *5 (S.D.N.Y. Apr. 5, 2004) (internal citation omitted)).

The undisputed allegations in the Complaint indicate that Segura had the requisite control and financial interest to be held vicariously liable for the violation. (See Compl. ¶ 6).[10] Since Segura has defaulted in this action, plaintiff's allegations remain unchallenged and must be accepted as true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.

---

[10]Although the Complaint only indicates that Segura was an "officer, director, and/or shareholder" of Sophi's Place Bar Restaurant, Inc. (see Compl. ¶ 6), the website of the New York State Department of State reveals that Segura is the registered Chairman or Chief Executive Officer of Sophi's Place Bar Restaurant, Inc., confirming plaintiff's allegation that Segura had sufficient control over the activities of Kaprichos Bar to be held individually liable. Also, it should be noted that Sophi's Place Bar Restaurant, Inc., and Kaprichos Bar, Inc., which are both named defendants, are registered to the same address -- the location of Kaprichos Bar (91-13 31st Avenue, East Elmhurst, New York 11369). Kaprichos Bar, Inc. does not have any individual registered with the New York State Department of State as an officer of the company.

Accordingly, the Court respectfully recommends that defendant Luis Segura be held jointly and severally liable for damages awarded in this action.[11]

D. Attorney's Fees and Costs

Pursuant to Section 605(e)(3)(B)(iii), plaintiff is also entitled to costs and reasonable attorney's fees. See 47 U.S.C. § 605(e)(3)(B)(iii) (stating that the court "shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails"); see also International Cablevision, Inc. v. Sykes, 997 F.2d at 1009. Plaintiff's counsel requests that the Court award him $550 in attorney's fees.[12] (Klass Aff. ¶¶ 4, 8). Requests for attorney's fees must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Casey, 711 F.2d 1136, 1154 (2d Cir. 1983). Counsel for plaintiff, Richard A. Klass, Esq., submitted a sworn affidavit in support of his $550 request indicating that he spent 2.2 hours working on this case at a billing rate of $250 per hour. (Klass Aff. ¶¶ 4, 8). Based on

---

[11] One court in this district recently found that similar allegations were insufficient to hold an individual defendant vicariously liable because that plaintiff had not demonstrated sufficient control by the owner or financial interest in the violation. See J & J Sports Productions, Inc. v. Daley, No. 06 CV 238, 2007 U.S. Dist. LEXIS 49839, at *8-11 (E.D.N.Y. Feb. 15, 2007). However, mindful of the difficulty that plaintiffs face in producing evidence in default cases such as this, and in keeping with the majority of courts in this district, the Court recommends that the individual defendant be held vicariously liable. See, e.g., J & J Sports Productions, Inc. v. Benson, 2007 WL 951872, at *7 (finding individual defendant vicariously liable); Garden City Boxing Club, Inc. v. Morales, 2005 WL 2476264, at *10 (same).

[12] The Court notes that plaintiff is again inconsistent in the amount requested in this instance. Counsel's billing records indicate that he spent 2.2 hours on this case, billed at $250 per hour. (Klass Aff. ¶¶ 4, 8). Yet, at another point in the Affidavit, counsel claims he spent 4.2 hours on the case. (Id. ¶ 9). The Court will credit plaintiff's billing records, and calculate counsel's fee based on 2.2 hours of time expended, which comes out to $550.

the information provided, the Court finds the attorney's fees to be reasonable, and therefore respectfully recommends that plaintiff be awarded $550 in fees.

While plaintiff could have claimed additional compensation for filing fees, plaintiff did not do so. See 47 U.S.C. § 605(e)(3)(B)(iii); 28 U.S.C. § 1920(5). Accordingly, no further relief is warranted.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that plaintiff be awarded $3,750 in statutory damages, plus an additional $10,000 in enhanced damages and $550 in attorney's fees, for a total award of $14,300.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing System (ECF) or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 12, 2008

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York